**L. F. BALDWIN, Appellant,**

v.

**Maude Combs BAKER et al., Appellees.**

Court of Appeals of Kentucky.

March 11, 1955.

Faulkner & Faulkner, Hazard, for appellant.

W. M. Melton, Hazard, for appellees.

MILLIKEN, Justice.

This is an appeal from a judgment directing the sale of a motorized shovel and the application of the proceeds to the satisfaction of a money judgment for $2,791.56 obtained by the appellee Maude Combs Baker in an action against the appellees Claude and Ida Mae Booth. The appellant, L. F. Baldwin, intervened because he has a recorded bill of sale to the shovel, but the appellee Mrs. Baker contends that it was procured in order to defraud her and other creditors of the Booths.

Mr. Booth was a construction contractor who became overextended financially in attempting to finish the Hazard Airport and the Cutshin Road contracts. He had real estate and road equipment of considerable value, but did not have sufficient cash to meet his pay rolls and other expenses. For several years he bought groceries on credit from Mrs. Baker, and finally gave her a note for $2,730.56, dated May 3, 1952, payable one year after date, on which she filed suit in August, 1953, obtaining judgment in the following November.

Nearly three years before Mr. Booth gave Mrs. Baker the note, he borrowed $25,000 from the Winchester Bank secured by his real estate and most of his road equipment. In January, 1951, he returned to the Winchester Bank for an additional loan, and was told that they could lend him no more on the security available. He testified that he did not consider himself insolvent at that time, saying: "No, I didn't know I was broke, but I knowed

that I was hurting awful bad." The appellant L. F. Baldwin, a civil engineer, had previously been sent to Hazard by the bank to straighten out the business phase of the Hazard Airport job, and had later taken a trip there at the request of Mr. Booth. Apparently, in an effort to extend additional credit to Mr. Booth and in order to help him complete his contracts, the bank interested Mr. Baldwin in lending Mr. Booth $10,000 on the security of two motorized shovels. Being a civil engineer, Mr. Baldwin had some conception of their values and admitted that the shovels were worth $15,000 to $20,000. However, one of the shovels was mortgaged to the Winchester Bank along with other equipment of Mr. Booth's, and was later sold when the bank was forced to foreclose its mortgage against Booth's property. The shovel in controversy was not included in the equipment mortgaged to the bank, but had a vendor's lien upon it amounting to $2,032, which was paid out of the $10,000 loaned to Mr. Booth by Mr. Baldwin. An outright bill of sale for the motorized shovel was given as security for the $10,000 loan, and in the bill of sale it was expressly stated that Mr. Booth could retain possession and use of the shovel until March 1, 1951. This instrument was recorded at Hazard on January 29, 1951, three days after its execution. It appears to have been the intention of all parties concerned to keep Mr. Booth in business, to help him complete his contracts, and thereby clarify the financial atmosphere. Mr. Booth was allowed to use the equipment on other jobs and even to rent it to a Louisville contractor for $750 a month, a rental which incidentally was never paid.

It will thus be seen that the Baldwin bill of sale was on record at Hazard fifteen months before Booth gave his note to Mrs. Baker and nearly three years before Mrs. Baker reduced her note to judgment. After she obtained the judgment she obtained a general order of attachment against Booth's property, including this shovel which was ordered sold by the court to satisfy her judgment. It was at this stage of the proceedings that Mr. Baldwin discovered that the shovel to which he had a bill of sale was about to be sold to satisfy Mrs. Baker's judgment. The trial court permitted him to intervene, to set up his claim, to attempt to prove it and finally decided adversely to him by directing the sale of the shovel to satisfy Mrs. Baker's judgment.

Much stock is made of the fact that Booth retained possession of the shovel, and that fact apparently is what persuaded the trial court to conclude that the transaction between Booth and Baldwin was entered into for the purpose of defrauding creditors. The trouble with this view is that there appears to be no question whatever but that Booth received the $10,000, although $2,032 of it were used to pay the vendor's lien on the shovel. In other words, Booth received money and turned it back into his business. While it may be true that Baldwin, as he admitted, had no intention of keeping the shovel if Booth could pay out, there was no explicit understanding to that effect. One thing is certain: Booth did not have any money available for use until he obtained the $10,000 from Baldwin.

It appears to be the contention of Mrs. Baker that Baldwin and Booth violated Chapter 378 KRS, governing Fraudulent and Preferential Conveyances, by permitting Booth to retain possession of the shovel. For example, KRS 378.040 provides:

"Except as provided by KRS 364.120, any voluntary alienation of or charge upon personal property unaccompanied by a transfer of possession, in good faith, shall be void as to a purchaser without notice, or any creditor, prior to the lodging for record of such transfer or charge in the office of the county clerk of the county where the alienor or person creating the charge resides."

In the case at bar, we can find no violation of the statute. The note on which Mrs. Baker got judgment was executed fifteen months after the bill of sale was re-

·corded. She was not misled for she extended no credit on the security of the ·shovel. On the other hand, Baldwin did, .and took a bill of sale to the shovel for his ·protection. If Baldwin's bill of sale is construed as a mortgage instead of an outright sale of the shovel, Baldwin is entitled to be preferred over Mrs. Baker in the payment ·of his claim. Since both Baldwin and Booth admit that Booth was to regain pos-·session of the shovel if he could pay out, ·the trial court was justified in construing the writing as a mortgage and to direct its sale. However, the claim of Mr. Baldwin, the appellant, should be paid from the pro-·ceeds of sale before any funds are avail-.able for Mrs. Baker.

That part of the judgment directing the sale of the shovel is affirmed, but that part ·giving Mrs. Baker priority from the pro-·ceeds of sale is reversed.